Case number 024145, the case of David W Allen v. Betty Mitchell. Mr. Ricotta for the appellant, you may proceed. Good afternoon. On behalf of the appellant, John Ricotta, I'd like to reserve five minutes for rebuttal. Your Honors, this case involves the voir dire and dismissal of biased juror Ms. Worthington in Mr. Allen's case. It is our contention that the 6th, 8th, 14th Amendment to the United States Constitution was involved and it was the unreasonable application of clearly established federal law to wit Morgan v. Illinois, along with a host of other cases, Witherspoon wit. But it is understood that the basic and fundamental right of all defendants is the 6th Amendment right to a fair and impartial jury and the due process mandates that the courts provide that to a defendant. In Mr. Allen's case, Juror Worthington on the record clearly, at least in my perspective, was a juror who should have been challenged and was challenged and should have been dismissed by the trial court for cause. Is the question of whether a juror is impartial a factual question or a legal question? I believe this would be a factual driven examination, Your Honor. So having said that, I certainly understand under 2254 D1 and D2 that the courts are somewhat restricted on how to examine a state court's finding in this matter. But I think if you look at the factual pattern here, the record itself, you have a capital offense here in Cuyahoga County. The court begins the voir dire examination by asking the entire panel, does anybody have any problem with sitting on this particular case? And I assume that the charge was read and that they were informed that it was a capital offense. Right away, Juror Worthington contacts the bailiff and indicates that she has a problem sitting on this particular case because two years earlier her brother had been murdered. And that murder case went to trial, that defendant had been acquitted, and she felt that this was an inappropriate case for her to sit on. Now it's the position of Mr. Allen that at this juncture, when she makes those representations to the court, the court should have taken the time to at least maybe taken her aside in chambers to examine her and to look at the situation and to delve into those questions at that particular time. The court said that it was going to get to that later, didn't it? It was just trying to see if the jurors were available to be at the trial. Yeah, I can understand you could get to it later, but there seemed like there was no reason to get to it later. Just based on those statements alone, and I'm sure this panel, having been familiar with murder cases, and particularly in a capital offense, I couldn't think of a situation that could be more damaging to the defendant. You've got a woman whose brother had been killed, went to trial two years earlier, and has stood up and the court asked her some questions later? Yes. She could be fair and impartial. Well, that's open to interpretation. When one examines the record in more detail, I don't believe that's the case. The situation was that, okay, she sits down. They then do the death qualifications, where they do the wit and the Witherspoon examination. It is the position of Allen when they go through that, is there any moral, philosophical, or religious position that you take that would preclude you from listening to this case and making a fair judgment based on the facts to an appropriate sentence of death, 20 years or 30 years? At that point, when they're doing the death qualifications, at least under Witherspoon and Wit, that was a time that the compelled to ask some questions regarding what her position would be in relation to the death penalty based on what she's already represented to the court earlier. That she, in fact, had a difficult time sitting on this particular case. The court completely ignored that. There was no questions asked during the death qualification portion of the trial to examine that in more detail. How do you get around the fact that there was an exchange between the prosecutor and Worthington, where the prosecutor asked whether she could make every effort, will make every effort humanly possible to set aside that experience and judge this case solely on the basis of her experience here? She said, yes, she could do that. I understand that, Judge. I know all the parties in this particular case, and they're very skilled prosecuting attorneys. Suffice it to say that if an experienced prosecutor has a person and asks them, I understand that you have this difficulty with this particular case, but can you set that aside, and could you try and give this the most attention that you can and try to at least give us a just verdict? Most people, when put in that position, will acquiesce to those statements. So more or less, what you have here is the prosecutor making the record, not Worthington making the record, if you follow my exchange here. It's easy for a prosecuting attorney to lead the juror in examination so that it becomes a yes and a no question, and it's simply easy for the juror to say yes. Do you think that's what makes it unconstitutional, because the prosecutor asked the question and not the court? No, I think it's unconstitutional. Well, that's a truthful answer, I think. It's unconstitutional because it's clear that based on the remaining answers that she gave, that she had bitter and resentment about the fact that the defendant in her brother's case was acquitted, the fact that she knew detectives on that case, the fact that the detectives and the prosecutor were still in contact with her and her mother, the fact that if the coroner testified she may have a problem listening to that testimony because it seems closely related to what happened on her brother's case. I mean, all those factors that a trial court should, in the interest of the Sixth Amendment and the fairness of the defendant and his due process rights, should, she should at least ask some questions or she should, when the defendant challenges it for that individual. Because there, you can clearly see that that individual is biased or has a pendence to follow what the state is going to present in this particular case. Counsel, could I just ask you a factual question? Sure. That I think I know the answer to, but I just want to confirm. Were any of the officers or detectives from her brother's, Ms. Worthington's brother's trial involved in Mr. Allen's trial? All these SIU people were. The coroner was the same. The detectives, I believe, was the same detective unit, Cleveland Homicide Detective Unit, but I believe it was a different detective that was assigned to that particular case. Okay. And what about the police officers? Were there any police officers from Ms. Worthington's brother's case that were involved in Mr. Allen's case? I don't believe so. I think it happened in a different district in the city of Cleveland. So I think there were different police officers. It's more or less, it would have been the coroner's office, BCI, and the whole homicides unit. Were there any coroners or anyone from the coroner's office who testified in Ms. Worthington's brother's case who also testified in Mr. Allen's case? I believe so. You know who they were? I think it was Dr. Challenger, I think. But there really wasn't much of a factual issue about what the coroner's testified to. He just testified to the cause of death. There wasn't any... Well, later on it became, you're correct, that there was no cross-examination of the coroner, as I recall, but one of the issues on post-conviction, and later on continually raised by David Allen, was the time of death and the fact that they never had their own pathologist. In post-conviction, they hired a pathologist that said the time of death was different than the time of death that was portrayed by the coroner in this particular case. Were there any people who were the same testified regarding trace evidence at the brother's trial and at Allen's trial? That was Ms. May. Those were the same individuals. The same people testified at the brother's trial? Yes. I think that was Ms. May from the trace evidence of Cuyahoga County. But the only ones in your brief are the people from the coroner's office, right? Well, I didn't... The only thing I argued in the brief was that she made that statement about the coroner's office. What I'm indicating to the court is that clearly when she makes all these statements, that the simple statement made by the prosecuting attorney to sort of wrap it up to see if she would follow the instructions of law and set aside her own personal feelings is not enough to overcome what we've already heard. That's my position. Then you go to the state court's opinion, and the state court's opinion, they cite State v. Tyler, a state court case that basically says if the record supports it, that's fine. In the trial court, it's appropriate for the court not to challenge the cause for cause. But I think that if you look at the dissent of the state Supreme Court case authored by Justice Wright and Moyer and Pfeiffer follow that, that's the more logical... That was the analysis of the case because they're citing Witherspoon, they're citing the federal court law, they're discussing the fact that this is a capital offense, they're discussing the record in total. If you look at the majority opinion by the state, they're simply saying the record was sufficient to uphold the trial court's finding. Well, they don't even take into consideration the federal law at that particular juncture. Let me ask you about another case, the Wayne Wright v. Witt case. Yes. And the directive in that case about giving deference to the credibility determinations of the trial judge. Absolutely. I think that... How does that play in here? Doesn't that mean we should give deference to the trial judge's determination that this juror would be unbiased based upon the way she presented herself in court? Well, I think, you know, the holding is that you should give deference to a court ruling or to the state court's ruling. You should give deference to the trial court is in the best position to evaluate the demeanor of the juror, how they're acting, which might not all be reflected in the record itself. I agree with that proposition. So how do you get around that here? I mean, is there anything in the record that this juror said that would make you question this district judge's ruling that she gave a credible answer when she said she could be unbiased? Yeah, yeah. I think everything that led up to that question would lead a trial court that was acting appropriately under the circumstances to question whether she could sit on this particular case. So is your client's position and Mr. Allen's position that based upon what is on the record, she could not be a biased juror or an unbiased juror? Is that the position or is it the position that there should have been more questions asked? Well, I think that, you know, I know the government challenged the fact that that wasn't raised at the original Proposition 1 in the district court. But it seems to me that under Mewman v. Virginia, there are certain constitutionally compelled questions that have to be asked by the trial court. And if those constitutionally compelled questions are not asked, then habeas relief is appropriate. I think that that's kind of the whole, you know, that case. And what I would say to the trial court was an experienced jurist, having been a prosecutor for a number of years. In fact, I worked with her in the prosecutor's office. She had been recently appointed to the bench or elected to the bench. And it seems to me that when the defense had run out of their preempts and this was the challenge was for cause, that it would be appropriate for a trial court under those preempts, not only in just a murder case, but in the fact that it's a capital offense, should have asked some particular questions about how those personal tragedy of losing her brother, having sit there day per day while he was being, while his case was being tried, the acquittal that caused her would affect her ability to evaluate the evidence of Mr. Allen's. But weren't those kinds of questions asked by the defense counsel? Yeah, and I think... So what I don't understand the point that the trial judge should have asked the question if defense counsel asked the question, isn't and there's a question, there are a series of questions that defense counsel raised after the prosecutor raised the question I mentioned earlier. And I would think you'd be focusing on what the answers were there. That initially Worthington, when asked whether she'd be able to hold back any kind of emotional rush when she sees these ladies, which are the trace evidence ladies, testifying about the same kind of things they did in your brother's case, you don't know whether she could hold back any emotional rush. You don't know. I can't say right now. That could be a little bit of a problem for you, couldn't it? Because it's too close. So why isn't the defense counsel raising these points showing that Worthington was emotionally involved and not suitable for this jury? Well, he did, Your Honor. I mean, the defense counsel challenged it for cause, citing among other reasons, her familiarity with potential state witnesses, her bitterness arising from the not guilty finding in her brother's murder case, and the emotional involvement as a result of her brother's case. That was the challenge for cause. What I'm saying to Judge Siler is maybe that's the time that the court, based on those challenges, would then follow it up with another question, because oftentimes in trial, the court seems to have a little more ability to get more probing answers from a juror than just the defense counsel or prosecutors. But certainly, based on that part of the record, it's clear that she should have upheld the challenge for cause and dismissed Worthington, just based on what you said and what the challenge was. It is a capital offense. You are condemning someone who's to death if found guilty. I can't think of why you would want to leave that particular juror on there when there is a question of bias. And so for those reasons, I would ask the court to grant my habeas relief on behalf of Mr. Allen. Thank you. I represent the warden in this case. The district court correctly determined that Allen was not entitled to habeas relief on this juror claim. First of all, the appellant is kind of mischaracterizing the record. In this case, the court absolutely did ask questions of the juror. In fact, the court asked the questions before allowing the prosecutor or the defense to ask What about his point about the timing of the questions? What's the warden's response to that? That it wasn't done during the Whit Witherspoon? His argument was that it should have been done earlier during the death penalty phase of questioning. I don't think that that has really any bearing because the questions were asked. So the fact that it happened a little later in the day than earlier in the day, I don't really think is any cause for concern. The questions were asked by the court, by the It's court transcript 452. The court says, quote, I certainly understand your feelings about that particular case and I feel very sorry for you and your family. Do you think you can set aside those feelings of bitterness from your experiences there and evaluate this defendant and reach a verdict with regard to this defendant based solely on the evidence that comes out in open court? Her answer, the juror's answer is yes, because the prosecution did everything that they could, meaning in her brother's case. The court then goes on and asks questions for another four pages of transcripts that the court is asking the questions before allowing the prosecutor to ask questions. So the fact that appellant is saying that the court can get more probing answers. I mean the court did ask the questions and did get the probing answers and to each of those questions she indicated that she could be fair and impartial. Suppose you have a series of questions by the trial judge, by the prosecutor, by the defense counsel and in some of the cases there's murder and lack of a conviction. And I understand I'm raising this as a general point, a hypothetical. Would that kind of a situation be one where it would be unreasonable for a trial judge not to grant a motion to dismiss for cause? Not necessarily, your honor, because when it is a juror question of whether a juror is biased and should be removed for cause, that is something that is left to the discretion of the trial court. Even on direct appeal, if this case had originated in the district court and then come here for direct appeal, you would rely on discretion of the trial judge who was able to witness the answers of the juror. And because all we have is a cold record, that is the whole reason that the deference standard for the original direct appeal. There's actually three layers of deference before it gets to you. You have the deference to the trial court, you also have deference to state court factual findings, and you have AEDPA deference. So in order for Mr. Allen to be granted habeas relief, you have to pass through three levels of deference. And this fact pattern is absolutely not worthy of overcoming all three levels of deference. The trial judge was in the best position to determine the credibility of the juror who answered the questions that she could be fair and put that case aside. And the trial judge put on the record that she had evaluated the juror's answers and found that she could put those aside. So you called that a factual finding. Is that the position of the state, that this is a factual finding by the trial judge and that therefore under AEDPA we would be trying to decide if it was an unreasonable determination of fact? Yes, Your Honor. Absolutely. This is a factual finding by the trial judge that the juror was able to serve, was not challengeable for cause. Is there a case that says that this type of a determination by a trial judge is a factual finding? I believe Witt says that. That's the leading Supreme Court case on the death qualifying of jurors, and that says that these decisions are factual findings by the court and they're afforded deference. Your opponent today said that it is a factual finding. Yes, Your Honor. We agree. It's not an issue, is it? No, we agree. It's a factual finding. What is your best Supreme Court case that you would rely upon? The other side says the Witt case. Is there any other case that we should look at? The Witt-Witherspoon line of cases, Adams, is the one that Witt reaffirmed Adams. All of the cases on this realm all go back to Witt as being the parent case on this. You're saying we should not be evaluating this as to whether there's an unreasonable determination of law by the state Supreme Court? That's correct, Your Honor. I believe that even in all of their briefing, it's all been that it's an unreasonable determination of law. I would note this argument that the court didn't ask these questions. One, it's belied by the record, and two, he never raised that, not only in the district court below, but he never raised that in state court. In state court and in the district court below, the claim has always been that, based on the record, Worthington should have been taken off for cause. But now he's morphed the claim into the court didn't ask enough questions and didn't ask them at the right time. That's never been raised before, that they should have asked the questions earlier on. In fact, the first time that's been raised is here today. The Ohio Supreme Court's decision was not an unreasonable determination of the facts, nor was it, even if the court were to do it under the 2254 D1 unreasonable application of law, it's not an unreasonable application of rape v. wit. Doesn't that give you trouble to think that a juror on a case would have been in a parallel situation vis-a-vis her brother being murdered and the accused murderer going free and her being troubled by that? Doesn't that give you pause to have her on the jury? Your Honor, I don't know if you're asking me if I was the prosecutor if I would have kept her on or agreed to afford cause, but the reality is that is not our decision to make. Our decision is whether it was a reasonable determination of the facts, and the court is in the best position, the trial judge is in the best position to judge her credibility. We are only looking at a cold record, we are not looking at what her demeanor was, we are not looking at whether she was able to set that aside. She says that she's able to, the words of the record say she was able to, the trial judge evaluated both her words and her demeanor, and therefore determined that she was able to set that aside, that that was a credible response. So would I on this record if I was the trial prosecutor have agreed with that? I can't tell you that for now because I did not get to witness and see that juror and how that juror acted, how that juror answered the questions. So I cannot answer that. Was the trial judge explicit about her evaluation of Worthington's demeanor, or is that something that you're inferring from the conclusion of the trial judge? Your Honor, the trial judge says specifically, this is at document 189.15, Sixth Circuit page 219, but transcript page 463. The court, okay, the juror when questioned unequivocally stated that she could be fair and impartial. Obviously she's had a terrible tragedy in her family, and other jurors have had other problems. I believe we had at least one or two other jurors in this case that had homicides in the family. I don't recall whether or not they were seated. But the jury was very straightforward, she understands the responsibility, and I don't see a problem with her serving. So, you know, that is the specific finding of the court. Specifically says, you know, I don't see a problem with her serving, and that has taken into account what has happened in her family. That passage that you read is the entirety of what the trial judge said about this, is that right? There's a second paragraph as far as other jurors being available. I suppose that's true in every criminal case that we could recess and have other jurors brought in. That's not a consideration whatsoever in this ruling. So that is what the judge's finding was as to the challenge for cause. The determination is essentially one of credibility, and therefore largely one of demeanor. As we have said, this is as the Supreme Court has said on numerous occasions, the trial court's resolution of such questions is entitled, even on direct appeal, to quote-unquote special deference. That's Patent v. Yount, U.S. Supreme Court case. And so therefore, I mean, the deference is owed to this trial court's decision, not only because it's an AEDPA case, but because it's a factual determination made by the trial court, and so you have to defer to that. Now, as to the question about what questions are constitutionally required, there is no clearly established federal law stating what questions are required during questioning to uncover bias based on potential jurors' previous experience with the judicial system. In fact, it's well established that the trial court has wide discretion in this area. So again, this is one of trial court discretion and AEDPA deference and deference to the trial court. However, if the test is, was there an abuse of discretion? There could be an abuse. It is not 100% that there must be an affirmance of a trial judge in these circumstances. Is that right? Your Honor, if this was on direct appeal, that might be a correct statement. But this is not on direct appeal. This is an AEDPA case, so no, that is not correct. The only place that would have the abuse of discretion standard would be at the trial court to the appellate court. And the appellate court's decision to affirm the denial of the four cause challenge, that is entitled to deference by way of AEDPA. Right. So I guess there's a question of what we mean by deference. Do we mean 100% always must be affirmed? Or do we mean we think the scale should be tipped in favor of the trial court? Your Honor, unfortunately, I believe you're bound by if it's a reasonable determination, whether you agree with it or whether you don't. No, I agree that the question is whether it's an unreasonable determination of fact as you're portraying the issue. And so what I'm pointing out is that to say that there's deference owed to a trial judge does not mean that if a trial judge says the moon is green, we would have to defer to that statement of fact. Right. That would have to be, you know, for the appellate court would have to, you know, determine whether that was a reasonable factual determination. But in this case, this is a reasonable factual determination based on the record. And the fact that the Ohio Supreme Court was divided 4 to 3 is not dispositive either, is it? No, Your Honor, it is not because, again, it was a 4 to 3, but it was 4 in the majority. And the majority said that this was reasonable. Well, are you saying then that any time a state Supreme Court decides something, that it has to be that the federal court denies habeas? Because obviously you have state Supreme Court justices deciding something, in my hypo. And the federal court would have no role in habeas if it could not find that it was unreasonable how the state Supreme Court justices decided. Is that right? I'm not sure I understand your question, but I believe if I'm correct, your question is, would this court always have to side with the majority? Right. Is that basically the question? No, you would not if it was an unreasonable determination. However, in this case, it is not an unreasonable determination based on the record. But you're saying then that any time the trial judge says, based on the demeanor, I am finding that this juror could fairly decide, and that the trial judge is affirmed by the state Supreme Court that there cannot be habeas. That would be correct because the trial judge is the one who is evaluating the demeanor of the juror. And that would just be the same as if, again, this was on direct appeal, and the district court had a jury, and the district judge had evaluated the juror, and you had the same case. You would still have to defer to the factual determination. But the Ohio Supreme Court justices did not defer. That's right, they didn't. So you're saying that they are not following their duty. That would be my position, yes, Your Honor. Judge Bush, did you have a question you looked like you were going to ask? Well, I think your point, I think you said something about, if I heard you correctly, you said you would always defer if it involves credibility of the witness or the juror. Is that what you said? I believe that the, I cannot think of a reason, of a time that you wouldn't defer. But there's something obvious in the record. Like, say the issue is, you know, is the moon made of cheese? And you know there's evidence it's not made of cheese, but the witness says it is made of cheese. And the trial judge says, I believe the witness is sincere, and that's, I'm going to, surely in that situation you wouldn't defer. No, I believe what my response was that you would always defer when it involves the demeanor of the witness, of the juror. And there's not anything else in the record that would call into question that determination. That's correct. That's correct, and I believe that's how the hypothetical was posed. Your position here is that there's nothing else in the record that would call into question that credibility determination. That's correct, Your Honor. If you read the juror's questions and answers, both to the court, to the prosecutor, and to the defense attorney, she never says or gives any hesitation. Does she admit that there's some bitterness? Yes. Does she admit that it might be difficult to listen to the coroner? Yes. But every time she's asked, can you set what happened two years ago to your brother's case aside, she says emphatically yes, and that she could determine this case based solely on what happens in the courtroom. And that's the answers that... So it's the standard that there has to be something in the record that calls into question the truthfulness of the juror when she says that she can be unbiased. Yes. Yes, Your Honor. That's exactly it. Because you have the judge making the demeanor determination. All we have, even if this was a direct appeal case, all the direct appeal judges would have would be the cold record. All we have here, even three more steps removed, is the cold record. The trial judge is the one that has the ability to determine the demeanor and the sincerity of those affirmative statements that she could be fair and impartial. It seems to me that your position is really saying that the three dissenting justices of the Ohio Supreme Court did not follow their duty in this case, which I think is a very serious accusation about their behavior, as opposed to recognizing that, at least on direct appeal, this was a very close question as to whether or not the trial judge should be affirmed. Well, it was maybe a close question at the Ohio Supreme Court, at the Court of Appeals, because this is a pre-'96 case. David Allen's case went to the Eighth District Court of Appeals first, and I believe that decision was a unanimous decision, three judges in affirmance of this. You then have seven judges to the three. Am I saying that those three judges misapplied their duty? That's not what I'm implying. They came to a different decision. We are bound at the AEDPA level to have deference to both the trial judge, the factual finding of the majority of the Ohio Supreme Court, and the Ohio Supreme Court's opinion because of AEDPA deference. So you have three layers of deference that you have to get around in order to support or to find with the minority of the Ohio Supreme Court, those three judges. The majority of the Ohio Supreme Court called this a factual finding. Is that what I just heard you say? I believe they did, Your Honor. Can you give me a moment? The Ohio Supreme Court states that the trial court's ruling on a challenge for cause will be affirmed if supported by substantial testimony. The Ohio Supreme Court cites Tyler. When you look at the Tyler case, Tyler goes on for multiple pages on the Witt standard. So again, for AEDPA deference, the state court does not need to specifically state the federal case as long as they apply the federal standard. And that Tyler case codifies and explains for Ohio courts the Witt case. And so that's proper. Here, the trial court found Worthington unbiased, a finding supported by Worthington's testimony. So there, the Ohio Supreme Court is stating that it is a factual finding. That's at head note two. It is, I believe it's at Ohio Supreme Court, 73, Ohio Supreme Court, 629. It's head note two is the paragraph I read to you. So the Ohio Supreme Court, the majority did call this a factual finding. If there are no other questions, for the foregoing reasons, the district court's decision denying habeas relief should be affirmed. Thank you. I will simply, in response, indicate that when we were discussing whether this is a determination, unreasonable determination of the facts under D2, 2254 D2, or a failure to follow Supreme Court precedent under D1, I think either avenue is available to this court. I think that the state versus Tyler case, although I somewhat disagree with my esteemed colleague, although it does indicate that you should look to the record to see if it can be supported by the trial court's determination, this is a capital offense, and therefore I think it should be guided by wit. Nobody mentions wit in the 8th District Court of Appeals. Nobody mentions it in the Ohio Supreme Court except for the dissent. If the majority follows the rule out of wit, they don't have to cite to it, do they? Well, that's my question. If Tyler is not a death penalty case, how could it follow what the rule is in Tyler? Isn't there different standards? That's why we have wit in Witherspoon. Didn't we make changes in voir dire and examination because it is a death penalty case? Wasn't that an effort to show a balancing for both the state and for the defense so that we could get a fair and impartial jury? That's why we have those guidelines for the trial court, but the Ohio Supreme Court and the 8th District Court of Appeals completely ignore that. As to the question of deference, the question is simply if by clear and convincing evidence we can show that the trial court was objectively unreasonable in its findings, not dismissing Worthington for cause as a biased juror, that's the determination. We don't have to defer to the trial court just because the trial court made a ruling. You're the reviewing court. The first person to mention wit was Judge Mattia in the district court. Do you agree that the standard, as the counsel for the warden said, that the standard is there has to be something in the record to call into question the veracity of the juror whenever she says that she can be unbiased? Well, I think when a juror stands up in the initial voir dire process and says, hey, I don't think this is an appropriate case for me. My brother was just murdered, and it only happened a few years ago. That should cause a red flag, an alarm right away. So the fact that she initially states that and then later says she can be unbiased, that you say that's enough to call into question the credibility determination of the trial judge that she was unbiased? I think the trial court was objectively unreasonable because any trial court would have considered this to be a red flag and would have, for the fair and impartial jury, would have, just to be cautious, dismissed Juror Worthington just based on the fact that the similarities between the two cases. Well, you seem to be contradicting what we had held in the Hughes case because it seemed like in the Hughes case there was emphasis placed on whether or not the trial judge had asked some questions when that red flag came up. In that case, it was a red flag like here where the juror said they didn't think they could be unbiased. And I think in Hughes there was no questioning by the court and that was the reason the Sixth Circuit held that the juror was improperly seated in that situation. But here there was questioning by the court. You seem to be saying there's not even an opportunity for the court to question the juror to try to rehabilitate or figure out whether the juror is unbiased. You're saying the red flag alone is enough that you should just go ahead and exclude the juror at that point. Is that your position? Hey, we're in a situation. It's a murder case. It's a capital offense. The fact that this just happened to this particular juror two years earlier and then she explains the circumstance of sitting through the trial, watching the trial, being bitter and resenting it. I would think that a trial court would, no matter what the answers were, would consider that to be a problem. That that's a bias that no matter how conscientious she's going to be or says she's going to be, it's a problem. You're trying to establish then a black letter rule that any time there is a similarity of events, of a significant nature between a juror's life and what the case involves, that juror should automatically be excused for cause. Is there a case that says that? Because we are on habeas and we have to be applying the law properly. We can grant habeas only if there's an unreasonable determination of fact or law or contrary to. Well, probably the best answer I can give the court is that most trial judges under these circumstances would never have permitted it, so there's probably very little case law. What some other trial judge did doesn't necessarily govern this case, right? No, I don't think so. You can look at it, but if it's another trial judge, that's not really too much evidence. Well, I guess it's precedent. I mean, we follow precedent. But the problem is that we're supposed to apply Supreme Court precedent, and the best case that you have relied on is Witt, correct? No, I think the best case is Morgan, probably. Morgan, okay. The Sixth Amendment, the due process argument, the fairness argument, those are the strong arguments. I think the trial court was objectively unreasonable in these circumstances. Thank you. I see your red light is on, so thank you very much for your argument. Thank you. And I see that you have been appointed pursuant to the Criminal Justice Act, and we thank you for your work on behalf of your client and the pursuant. I've been on it a long time. Well, thank you, and thank your opponent as well for the argument. We will have the case submitted, and you may adjourn court.